UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

KRISTI M.,[1]

        Plaintiff,

   v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Case No. 3:20-cv-00336-YY

OPINION AND ORDER

YOU, Magistrate Judge:

Plaintiff Kristi M. seeks judicial review of the final decision by the Social Security

Commissioner ("Commissioner") denying her application for Disability Insurance Benefits

("DIB") under Title II of the Act, 42 U.S.C. §§ 401-433. This court has jurisdiction to review

the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(g)(3). For the reasons

set forth below, that decision is REVERSED and REMANDED for further proceedings.

Plaintiff originally filed for DIB on August 15, 2017, alleging disability beginning on

April 1, 2014. Tr. 142-54. Her application was initially denied on September 11, 2017, and

upon reconsideration on October 4, 2017. Tr. 50, 58. Plaintiff requested a hearing before an

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of her last name.

Administrative Law Judge ("ALJ"), which took place on November 7, 2018. Tr. 30-49. After receiving testimony from plaintiff and a vocational expert ("VE"), ALJ Vadim Mozyrsky issued a decision on January 2, 2019, finding plaintiff not disabled within the meaning of the Act. Tr. 15-25. The Appeals Council denied plaintiff's request for review on January 6, 2020. Tr. 1-3. Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since April 1, 2014, her alleged onset date. Tr. 17. At step two, the ALJ determined plaintiff suffered from the following severe impairments: spherocytosis, chronic fatigue syndrome ("CFS"), depression, and anxiety. *Id.* The ALJ recognized other impairments in the record, i.e., adrenal fatigue and migraine headaches but concluded these conditions to be non-severe. Tr. 17-18.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 18. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except plaintiff can occasionally climb ramps and stairs; can never climb ladders and scaffolds; can occasionally balance, stoop, kneel, crouch, crawl; cannot have concentrated exposure to unprotected heights or moving mechanical parts; cannot operate a motor vehicle; and is limited to simple routine tasks and occasional contact with coworkers and the public. Tr. 19-20**.**

At step four, the ALJ found plaintiff incapable of performing past relevant work. Tr. 23.

At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, she could perform jobs that existed in significant numbers in the national economy including document preparer, table worker, and taper. Tr. 24. Thus, the ALJ concluded plaintiff was not disabled. *Id.*

**DISCUSSION**

Plaintiff argues the ALJ erred by (1) improperly discounting her subjective symptom testimony; (2) erroneously assessing the medical opinion evidence of Dr. Owen; and (3) failing to establish the step five burden showing that there are a significant number of jobs in the national economy that plaintiff can perform with her limitations.

## I.    Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).  A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).  If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029.  SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's

record when evaluating the intensity and persistence of symptoms.  *Id.* at *1-2.  The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."  *Id.* at *4.

Here, the ALJ recounted plaintiff's claims and testimony.  Tr. 19.  The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  *Id.*  In particular, the ALJ cited to the objective medical evidence, plaintiff's work history, conservative treatment, effective treatment, and activities of daily living.

### A.    Objective Medical Evidence

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8.  A lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony.  *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")).  However, when coupled with other permissible reasons, inconsistencies between a claimant's allegations and objective medical evidence may be used to discount a claimant's testimony.  *Tatyana K. v. Berryhill*, No. 3:17-cv-01816-AC, 2019 WL

464965, at *4 (D. Or. Feb. 6, 2019) (citing *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197-98 (9th Cir. 2004)).

### 1.    CFS

With respect to plaintiff's CFS symptoms, the ALJ found that plaintiff "was rarely, if ever, observed to appear fatigued or tired in appointments with her healthcare providers, which is very inconsistent with the extent of the claimant's alleged fatigue symptoms and related limitations." Tr. 21.

The Ninth Circuit has recognized that CFS is not a condition that generally presents with extensive objective findings. *Reddick*, 157 F.3d at 726 (explaining that the Center for Disease Control defines CFS as "'*self-reported* persistent or relapsing fatigue lasting six or more consecutive months'") (emphasis in original) (citation omitted); *see also* SSR 14-1P, *available at* 2014 WL 1371245, at *3 (explaining that the various "Diagnostic Symptoms" of CFS may be established by a patient's self-reports).

Moreover, plaintiff's persistent fatigue is in fact documented throughout the record over a period of years. *See* Tr. 293 (10/2014), 295 (11/2014), 297 (5/2015), 301 (6/2015), 304 (9/2015), 305 (5/2016), 308 (6/2016), 314 (7/2016), 320 (8/2016), 323 (9/2016), 334 (1/2017), 335 (2/2017), 337 (6/2017), 341 (8/2017), 448 (9/2017), 626 (10/2017), 642 (12/2017), 644 (1/2018), 646 (3/2018), 648 (7/2018). Reports indicate that plaintiff had a "huge drop in energy level," Tr. 475, and "chronic fatigue sx have been worse lately, barely able to function." Tr. 567. Further, the record includes laboratory test results that correlate to CFS. *See* Tr. 420 (lab results indicating past exposure to Epstein-Barr), 421 (lab results detecting Human Herpesvirus 6); SSR 14-1P, *available at* 2014 WL 1371245, at *5 (listing "[a]n elevated antibody titer to Epstein-Barr virus" as among the "laboratory findings [that] establish the existence of [a medically

determinable impairment ("MDI")] in people with CFS," explaining that CFS research is "ongoing," and giving the presence of Human Herpesvirus 6 as an example of a laboratory finding that may have been discovered to be an "additional sign and laboratory finding to establish that people have an MDI of CFS").

The ALJ also found that plaintiff's "muscle pain issues" were not explained by any medical condition and she "was rarely, if ever, observed to be in distress or to exhibit pain behavior in examinations during the period at issue." *Id.* (citing 296, 298, 302, 306, 323, 334, 342, 645). However, muscle pain is a symptom of CFS. *See* SSR 14-1P, *available at* 2014 WL 1371245, at *3 (listing muscle pain as a symptom of CFS).

For these reasons, the ALJ improperly rejected plaintiff's CFS testimony based on inconsistency with the objective medical evidence.

### 2.     Anxiety and Depression

With respect to plaintiff's anxiety and depression, the ALJ observed that plaintiff "rarely complained of problems with attention, concentration, or memory, and was not observed by healthcare providers to have signs of significant deficits in mental functioning." Tr. 21. The record supports this conclusion. *See* Tr. 293, 295, 298, 300, 302, 304, 306, 309, 312, 317, 319, 321, 323, 325, 327, 329, 333, 335, 337, 340, 342, 625, 627, 642, 646 ("denies anxiety, depression, memory problems"). Thus, substantial evidence supports the ALJ's finding with respect to plaintiff's anxiety and depression.

### B.     Conservative Treatment

An ALJ may discount a claimant's testimony based on conservative treatment. *Parra*, 481 F.3d at 750-51 (citation omitted).

### 1.   CFS

The ALJ found that plaintiff's "routine and conservative treatment . . . strongly suggest[s] that [her] fatigue symptoms are not at a level that would completely interfere with her ability to sustain fulltime work activities."  Tr. 21.  Specifically, the ALJ noted that plaintiff "has not required aggressive treatment for fatigue such as a stimulant."  *Id.*

According to the Center for Disease Control, "no definitive treatment for CFS exists." *Reddick*, 157 F.3d at 727.  Under these circumstances, plaintiff's failure to pursue more aggressive treatment, such as a stimulant, is not a proper basis for discounting her symptom testimony.  *See Daniel D. v. Comm'r Soc. Sec. Admin.*, No. 3:18-CV-00654-HZ, 2019 WL 4467631, at *6 (D. Or. Sept. 17, 2019) (finding the ALJ erred in rejecting the plaintiff's symptom testimony on the basis that the plaintiff "did not require aggressive treatment, 'such as stimulants,' for . . . chronic fatigue syndrome").

### 2.   Depression and Anxiety

Regarding plaintiff's depression and anxiety, the ALJ found that plaintiff "had a very limited, routine, and conservative course of mental health treatment during the period at issue." Tr. 21.  The ALJ observed:

> [Plaintiff] did not see a mental health specialist for therapy, counseling, or medication management. . . . Her primary care provider prescribed medications for anxiety and depression including Lexapro and Celexa.

*Id.* (citing Tr. 38, 49).

Courts characterize mental health treatment with Celexa and Lexapro as conservative. *See, e.g.*, *Pradd v. Colvin*, No. 15-CV-1610 BAS (BGS), 2016 WL 4126386, at *5 (S.D. Cal. July 15, 2016), *report and recommendation adopted*, 2016 WL 4098302 (S.D. Cal. Aug. 2, 2016) (describing treatment with Celexa, Wellbutrin, Trazadone, Ativan, and Prozac as

conservative); *Shapiro v. Colvin*, No. 2:13-CV-1688-APG-PAL, 2015 WL 13738595, at *7 (D.

Nev. June 22, 2015), *report and recommendation adopted*, 2015 WL 7871338 (D. Nev. Dec. 3,

2015) (describing treatment with Celexa and Xanax as "routine conservative prescription

medication"); *Tenhet v. Astrue*, No. 1:08CV0870 DLB, 2009 WL 799148, at *2 (E.D. Cal. Mar.

24, 2009) (describing treatment with Lexapro as "very conservative"). Here, plaintiff's only

treatment was Lexapro and Celexa, and therefore the ALJ correctly characterized it as

conservative. Thus, the ALJ properly rejected plaintiff's depression and anxiety symptom

testimony based on the fact that she received conservative treatment.

### C.    Effective Treatment

An ALJ may discount a claimant's testimony based on effective treatment. *Warre v.*

*Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Here, the ALJ rejected plaintiff's CFS symptom testimony based on her "partially

positive response to treatment[,]" specifically noting that "[plaintiff] was treated with Aclovyir

(for a Herpes infection linked to CFS). She reported some improvement in her symptoms with

this treatment." Tr. 21 (citing Tr. 326). The ALJ's reliance on this single note indicating partial

symptom improvement, however, ignores plaintiff's numerous reports of ongoing fatigue. *See*

Tr. 316, 317, 323, 324, 325, 649; *see also* Tr. 334, 567 (indicating CFS symptoms had

worsened). An ALJ may not "cherry pick" one instance of improvement as a basis for rejecting

all of plaintiff's symptom testimony. *See Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th

Cir. 2001) (holding ALJ cannot selectively rely on some entries in plaintiff's records while

ignoring others). This isolated notation of improvement did not reflect the longitudinal records,

and, thus, the ALJ improperly rejected plaintiff's testimony based on effective treatment. *See*

*Garrison*, 759 F.3d at 1013-14.

D.    **Work History**

An ALJ may rationally rely on the evidence of a plaintiff's work history to reject the

alleged severity of symptom testimony.  *See* 20 C.F.R. § 416.929(c)(3) (stating that the

Commissioner will consider information about a claimant's work record in assessing symptom

severity).

Here, the ALJ observed:

The claimant has a history of spherocytosis, which is a hereditary condition that
causes a form of autoimmune hemolytic anemia, jaundice, and splenomegaly. . . .
She was able to work in the past despite this condition, and the evidence does not
show her symptoms from this condition worsened significantly at the time of the
alleged onset date or afterwards.

Tr. 20 (citing Tr. 294).

However, at the administrative hearing, plaintiff testified that around her alleged onset

date she stopped working due to CFS symptoms, not due to spherocytosis symptoms:

I was working at the computer, I had to make copies and things like that, that I,
after a while, I would stop being able to see the screen and I wasn't able to sit.  I'd
have to find a way to lay down after just a couple of hours working. . . and . . .
part of my decision to stop work was that I was having a really tough time
mak[ing] that happen.

Tr. 43; *see* SSR 14-1P, *available at* 2014 WL 1371245, at *3 (listing visual difficulties and

orthostatic intolerance as symptoms of CFS).  The ALJ erred by ignoring that plaintiff stopped

working because of her CFS conditions.  *See Patricia K. v. Berryhill*, No. 6:17-CV-627-SI, 2018

WL 3745824, at *5 (D. Or. Aug. 7, 2018) (holding that the ALJ improperly rejected the

plaintiff's subjective testimony where she testified that "that she left [her job] because 'it was too

much for [her] to do'"); *cf. Caldwell v. Comm'r of Soc. Sec.*, No. 2:15–cv–1002–KJN, 2016 WL

4041331, at *6 (E.D. Cal. July 26, 2016) (finding that "the ALJ reasonably relied on [the]

plaintiff's work record in discounting her credibility" where "there [was] evidence suggesting

that [the] plaintiff had stopped working for reasons not related to her impairments").

### E.    Activities of Daily Living

An ALJ may discount a plaintiff's symptom testimony based on activities of daily living

to (1) illustrate a contradiction in previous testimony, or (2) demonstrate that the activities meet

the threshold for transferable work skills.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here, the ALJ invoked the former, i.e., that plaintiff's "activities of daily living are less limited

than would be expected given her allegations of disabling symptoms and limitations."  Tr. 22.

In support, the ALJ observed:

[Plaintiff] testified that she is active in her church and does some business
management for the church choir.  She testified that she wrote a several-hundred
page fantasy novel the prior year.  In her function report, she indicated that she
did not provide care for others, but she testified that she provided care for her son,
who was born during the period at issue.  Her husband works outside of the home,
and presumably this means that the claimant takes care of a young child at home
by herself.  She reported having physical difficulties with attending to her self-
care, but she did not report this to her healthcare providers.  She reported
preparing meals daily, but only doing limited housework.  She reported driving
and shopping in stores infrequently.  She did not report mental difficulties with
handling money.  She reported participating in a weekly writers group, attending
church, and occasionally getting out of the house to have lunch with her sister and
mother.  The claimant told a healthcare provider in 2015 that she had been on a
long hike.  The evidence references the claimant shopping in a mall in 2016 and
having to frequently bend down and pick up her child.  The evidence also
referenced the claimant traveling to Delaware for a month in 2016.

*Id.* (citing Tr. 167, 168, 169, 170, 303, 326, 422).

Many of the cited activities are taken out of context or are consistent with plaintiff's

testimony.  For example, although plaintiff testified that she helps take care of her son, she

further testified that her husband primarily takes care of the child when he is home, that the child

attends day care while her husband is at work, and that a family friend helps with childcare when

her husband is in class.  Tr. 38-39.  Plaintiff's limited ability to care for her son does not detract

from her claims of disabling conditions. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (finding that "the mere fact that she cares for small children does not constitute an adequately specific conflict with her reported limitations"). Nor does a single hike, a single visit to the mall, or a single trip to Delaware to visit her sister undermine plaintiff's testimony. *See Hostrawser v. Astrue*, 364 F. App'x 373, 378 (9th Cir. 2010) (noting that the ability to undertake normal activities and occasionally travel was not inconsistent with disability). Additionally, although plaintiff testified that she can prepare meals, work on household bills, and take part in managing the church choir, she further testified that "most of the time my husband prepares our meals," her work for the church choir is minimal, she cannot work on household bills for more than an hour before needing to rest, and she works on her novel for no more than a half an hour a day. Tr. 37, 39. Thus, plaintiff's activities do not contradict her allegations of disabling symptoms and limitations, and therefore do not constitute a basis for rejecting her subjective symptom testimony. *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001) (holding that "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability").

## II.    Medical Opinion of Michael Owen, M.D.

Plaintiff filed her application for benefits on August 15, 2017. Tr. 15. For claims filed on or after March 27, 2017, 20 C.F.R. § 404.1520c governs how ALJs must evaluate medical opinion evidence under Title II.[2] *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017). ALJs no longer "weigh" medical opinions but rather determine which are most "persuasive." 20 C.F.R.

---

[2] Under Title XIV, 20 C.F.R. § 416.920c applies.

§ 404.1520c(a)-(b).  To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. 5844, at 5867-68; *see also* 20 C.F.R. § 404.1520c(a).  Instead, the Commissioner evaluates the persuasiveness of all medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. § 404.1520c(a), (c)(1)-(5).  The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process.  20 C.F.R. § 404.1520c(c).

The new regulations require the ALJ to articulate how persuasive the ALJ finds the medical opinions and to explain how the ALJ considered the supportability and consistency factors.  20 C.F.R. § 404.1520c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020).  "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements."  *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020).  However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical."  *Tyrone*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

The court must continue to consider whether the ALJ's decision is supported by

substantial evidence.  *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims

under our current rules have focused more on whether we sufficiently articulated the weight we

gave treating source opinions, rather than on whether substantial evidence supports our final

decision."); *see also* 42 U.S.C. § 405(g).

### A.    Whether the "Specific and Legitimate" Standard Still Applies

As an initial matter, the parties disagree about the relevance of Ninth Circuit case law in

light of the amended regulations.  Specifically, the parties dispute whether an ALJ is still

required to provide specific and legitimate reasons for discounting a contradicted opinion from a

treating or examining physician.  *Compare* Pl. Br. 13 *with* Def. Br. 12.  The Commissioner

argues "the new regulations apply in this case and the prior case law—including a hierarchy of

opinions applying articulation requirements like 'specific and legitimate' or 'clear and

convincing' reasons—no longer apply."  Def. Br. 12.

Under current Ninth Circuit law, an ALJ must provide "clear and convincing" reasons to

reject an uncontradicted opinion from a treating or examining doctor and "specific and

legitimate" reasons to reject a contradicted opinion from such doctor.  *Lester v. Chater*, 81 F.3d

821, 830-31 (9th Cir. 1995).  The regulations pertaining to applications filed before March 27,

2017, set out a hierarchy for treatment of opinion evidence that, consistent with Ninth Circuit

case law, gives treating sources more weight than non-treating sources, and examining sources

more weight than non-examining sources.  *See Standards for Consultative Examinations and

Existing Medical Evidence*, 56 Fed. Reg. 36,932, *available at* 1991 WL 142361 (Aug. 1, 1991);

*Magallanes*, 881 F.2d at 751 (adopting the "clear and convincing" and "specific and legitimate"

standards for rejecting treating and examining source medical opinions); *Murray v. Heckler*, 722

F.2d 499, 502 (9th Cir. 1983) (holding that "[i]f the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record).

The Ninth Circuit has not yet considered whether the revision of the 2017 regulations requires re-evaluation of the "specific and legitimate" standard for review of medical opinions. *See Robert S. v. Saul*, No. 3:19-CV-01773-SB, 2021 WL 1214518, at *4 (D. Or. Mar. 3, 2021), *report and recommendation adopted*, 2021 WL 1206576 (D. Or. Mar. 29, 2021) (collecting cases). Nevertheless, "[e]ven under the Commissioner's new regulations, the ALJ must articulate why he has rejected the opinion" and "the Ninth Circuit's 'specific and legitimate standard' is merely a benchmark against which the Court evaluates that reasoning." *Scott D. v. Comm'r Soc. Sec.*, No. C20-5354 RAJ, 2021 WL 71679, at *4 (W.D. Wash. Jan. 8, 2021); *see* 20 C.F.R. §§ 404.1520c(a). The court therefore considers whether the ALJ adequately addressed the persuasiveness, including the supportability and consistency, of Dr. Owen's opinion.

### B.    Dr. Owen's Opinion

In an October 29, 2018 functional assessment form, Dr. Owen stated that he had been plaintiff's primary care provider for four years and that her current diagnoses are depression, myalgia, and fatigue. Tr. 650. Dr. Owen opined that in an eight-hour workday plaintiff can lift and carry less than 10 pounds; can stand and/or walk less than two hours and for 30 minutes at one time; can sit less than two hours and for 30 minutes at one time; is limited in her ability to push/pull in her upper and lower extremities; can occasionally climb, balance, stoop/bend, kneel, crouch, crawl, and reach. Tr. 651. As to plaintiff's mental functioning, Dr. Owen opined that plaintiff is markedly limited in responding to demands; she is extremely limited in working at an appropriate and consistent pace, completing tasks in a timely manner, sustaining an ordinary

routine and regular attendance at work, working a full day without needing more than the allotted

number or length of rest periods during the day, handling conflicts with others, and responding to

requests, suggestions, criticism, correction, and challenges; and she is moderately limited in

keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or

suspiciousness.  Tr. 652-53.  Dr. Owen also stated that plaintiff would need unscheduled breaks

every 30 minutes and would miss 16 hours of work a month.  Tr. 654

The ALJ found Dr. Owen's opinion unpersuasive because it was inconsistent with and

unsupported by the record.  Tr. 22-23.  The ALJ thus addressed the two key factors identified in

the 2017 regulations.  20 C.F.R. § 404.1520c(b)(2).

### C.    Analysis

#### 1.    Inconsistency

The ALJ rejected Dr. Owen's opinion because it "is inconsistent with the weak objective

evidence, the routine and conservative course of treatment for physical and mental impairments,

the partial response to treatment, and the claimant's activities of daily living."  Tr. 22-23.  The

conflicts identified by the ALJ may justify rejecting a medical opinion.  *See* 20 C.F.R.

§ 404.1520c(c)(2) (an ALJ may reject an opinion due to inconsistency with the medical record).

Here, however, these reasons do not constitute substantial evidence because they are the same

erroneous reasons the ALJ used to reject plaintiff's symptom testimony.  *See supra* I.A.-E.

#### 2.    Lack of Support

The ALJ also rejected Dr. Owen's opinion because it "provided little support for the

limitations indicated in his opinion."  Tr. 22.  While Dr. Owen did not provide lengthy

explanations, his opinions are in fact supported by his treatment notes.  *See* Tr. 629-49.  Opinions

"based on significant experience with [the claimant] and supported by numerous records [are]

entitled to weight that an otherwise unsupported and unexplained check-box form would not merit[.]" *Garrison*, 759 F.3d at 1013.

The ALJ also reasoned that "[Dr. Owen's] treatment notes do not document objective evidence of pain behavior, weakness, or other findings that would support the extreme limitations in the statement." Tr. 22. Although these are relevant considerations, 20 C.F.R. § 404.1520c(b)(2), CFS often manifests with "normal" objective findings. *See Daniel D.*, 2019 WL 4467631, at *8 (finding that "plaintiff's normal range of motion, normal strength, and normal gait are not inconsistent with a diagnosis of chronic fatigue syndrome"). The "hallmark" of CFS is "the presence of clinically evaluated, persistent, or relapsing chronic fatigue" that "has not been lifelong," cannot be explained by a different disorder, is not the result of ongoing exertion or substantially alleviated by rest, and "results in substantial reduction in previous levels of occupational, educational, social, or personal activities." SSR 14-1P, *available at* 2014 WL 1371245, at *3. In addition, for a CFS diagnosis, the Center for Disease Control requires "the occurrence of 4 or more specific symptoms that persisted or recurred during 6 or more consecutive months of illness and did not pre-date the fatigue." *Id.* These symptoms include:

  (1) Postexertional malaise lasting more than 24 hours;

  (2) Self-reported impairment(s) in short-term memory or concentration severe enough to cause substantial reduction in previous levels of occupational, educational, social, or personal activities;

  (3) Sore throat;

  (4) Tender cervical or axillary lymph nodes;

  (5) Muscle pain;

  (6) Multi-joint pain without joint swelling or redness;

  (7) Headaches of a new type, pattern, or severity;

(8) Waking unrefreshed.

*Id.* Various other symptoms may also exist, including muscle weakness, disturbed sleep patterns, respiratory difficulties, and gastrointestinal discomfort (such as abdominal pain). *Id.* Often, individuals with CFS have "co-concurring conditions," such as fibromyalgia, irritable bowel syndrome, and migraines. *Id.*

Plaintiff's fatigue is well documented in Dr. Owen's notes—she reported it at nearly every visit. *See* Tr. 293, 295, 297, 299, 301, 303, 305, 308, 311, 314, 315, 316, 318, 320, 324, 326, 333, 335, 337, 339, 341, 624, 626, 642, 644, 646, 648. Dr. Owen's notes also reflect many symptoms of fatigue, including postexertional malaise, waking unrefreshed, pain, weakness, disturbed sleep patterns, respiratory difficulties, and gastrointestinal discomfort. Tr. 305, 306 ("increase with fatigue after exercise"), 296 (upper respiratory tract infection), 648 ("body pain"), 322, 323 (muscle spasms), 308 ("extreme morning fatigue"), 293, 296, 295, 296 (stomach pain), 337, 338, 339, 340, 642, 644, 646, 648 (sleep difficulties), 339 (weakness). Dr. Owens' notes additionally reflect the co-occurring conditions of migraines and fibromyalgia. Tr. 300, 301, 302, 303, 305, 308, 311, 314, 316, 318, 320 (migraines), 334, 336, 338, 340, 342, 625, 627, 645, 647, 649 (myalgia). In sum, Dr. Owen's notes are replete with evidence that the Social Security Administration's own rules recognize as the hallmarks of CFS. As such, the ALJ's finding that Dr. Owen's opinion was inconsistent is not supported by substantial evidence. *See* 20 C.F.R. § 404.1520c(c)(2).

## III.    Step Five

Plaintiff argues that the ALJ failed to carry the burden of proof at step five of identifying other work in the national economy. Pl. Br. 15-17. Because the ALJ committed reversible error

in evaluating plaintiff's symptom testimony regarding her CFS and assessing Dr. Owen's

opinion, the RFC was not based on substantial evidence.

**IV.     Remand**

Plaintiff does not request a remand for the immediate payment of benefits.  *See* Pl. Br. 18.

Therefore, the court need not conduct a credit-as-true analysis.  As discussed, the ALJ

improperly discounted plaintiff's subjective symptom testimony regarding CFS and Dr. Owen's

opinion.  Accordingly, the court remands for further administrative proceedings to: (1) re-

evaluate plaintiff's CFS symptom testimony, (2) properly examine Dr. Owen's opinion, and (3)

conduct any additional necessary proceedings, including, but not limited to, reassessing

plaintiff's RFC and determining whether plaintiff can perform other work in the national

economy.

## ORDER

The Commissioner's decision is REVERSED and REMANDED for further proceedings

consistent with this opinion.

DATED  September 27, 2021.


_____
/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge